Filed 12/20/22  P. v. Dalton CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALVIN HENRY DALTON,<br><br>    Defendant and Appellant. | F084303<br><br>(Super. Ct. No. F11901198)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Gary R. Orozco, Judge.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Poochigian, J. and Franson, J.

Appointed counsel for defendant Alvin Henry Dalton asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant responded, contending the superior court erred in summarily denying his petition for resentencing filed pursuant to former Penal Code section 1170.95[1] (now § 1172.6).[2] We affirm.

## BACKGROUND

A feud had existed for some time between next door neighbors in a Fresno apartment complex—defendant and his girlfriend Lora on one side of the feud and Danetta H. and her two teenaged children, daughter Dazhane and son Dezmon, on the other side. On March 2, 2011, defendant intervened in a physical altercation between Lora and the three neighbors, and then he pulled out a gun and shot all three neighbors. As a result of the shootings, Danetta died from a gunshot wound to the head, Dazhane suffered serious injuries requiring surgery, and Dezmon suffered superficial injuries. (*People v. Dalton* (Jan. 30, 2014, F063443) [nonpub. opn.] (*Dalton*).)[3]

At about 11:30 a.m. that day, "Danetta and Dazhane were walking home from a nearby store when Lora started spraying them with mace and another strong-smelling substance. Dazhane reacted by throwing Gatorade bottles and a water bottle towards Lora, and Danetta sprayed Lora with a mixture of water and insect spray.

"Lora went inside her apartment and shortly remerged carrying a pot of steaming hot water. Lora ran towards Danetta and poured the water on her. Lora then hit Danetta

---

[1] All statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6 with no substantive change. (Stats. 2022, ch. 58, § 10.) We will refer to section 1172.6 henceforth.

[3] We take judicial notice of the opinion and record in *Dalton*, *supra*, F063443.

multiple times with the pot.  Dazhane ran over and grabbed Lora by the hair and hit Lora multiple times in the head.

"Defendant, who had been outside fixing the lock on his door, went to grab Dazhane and pull her off Lora.  As he pulled Dazhane away from Danetta and Lora, defendant said, 'Let it be a one-on-one fight.'  Dazhane continued to hit and kick defendant as he moved her away from Danetta and Lora who were now both on the ground.

"Dazhane was able to get away from defendant and called out for her brother, Dezmon.  A few seconds later, Dezmon ran out of their apartment and tried to pull Lora off Danetta. In the meantime, defendant punched Dazhane in the face and she fell to the ground.  After defendant punched Dazhane, Dezmon asked, 'You just going to hit my sister?' Defendant replied, 'yes.'

"Dezmon pushed defendant and punched him in the face.  Defendant said, 'Oh, you're going to hit me, you're going to hit me?'  Then defendant said, 'F[**]k this sh[*]t' and pulled out a gun.  After firing one shot into the air, defendant pointed the gun at Danetta and shot her two to three times.  After Danetta fell to the ground, defendant pointed the gun at Dazhane and shot her twice.  Defendant then pointed the gun at Dezmon and fired two shots.

"Dezmon started walking towards defendant and said, 'You shot my mom' and 'You killed my mom.'  Defendant said 'yes' to each statement.  Dezmon became angry, grabbed defendant's arm, and started wrestling with defendant standing up.  As they were wrestling, defendant touched Dezmon's chest with the gun and Dezmon heard a click. Lora came up next to them and asked defendant to give her the gun.  Defendant handed Lora the gun and let go of Dezmon.  Defendant then went into his apartment." (*Dalton*, *supra*, F063443.)

In his defense, "[d]efendant described living next door to Danetta as 'constant terrorism.' Defendant explained that Danetta had threatened him and his personal property many times, and had vandalized his patio, car, and truck.

"On the night before the shooting, defendant came home to find his security screen door covered with a 'sludge material' including pasta. Lora had to let him in because he could not get his key in the lock. Defendant got three pots of hot water and took them outside to clean the door.

"Around 11:00 p.m., Danetta came out and said, 'um-hum, you're going to be cleaning all night' and '[m]e and my homeboys, we're going to jack you—you and your car tonight,' referring to the Strothers Boys gang. Dazhane was standing next to Danetta when she made this threat. Defendant took it to be a credible threat because Danetta had carried out all her past threats.

"After Danetta threatened him, defendant immediately went inside his home and armed himself. He then went back outside and threw hot water on the security screen door. It took him about 30 minutes to clean the door. Defendant also called the police that night. He estimated that there had been 50 such incidents in the past six months where the police had been called.

"The next morning, defendant went outside to clean the lock on the security screen door. Dazhane tried to follow Lora inside their apartment, but defendant stopped her. He then turned his attention back to cleaning the lock. Next defendant heard Danetta and Dazhane cussing and yelling at Lora. He turned around and saw Danetta and Lora 'tangled' on the ground, and saw Dazhane kicking and punching Lora in the head. Defendant dropped what he was doing and ran over and pulled Dazhane off of Lora. Dazhane punched defendant in the face, kicked him in the legs and groin area, and tried to bite him in the chest.

"Defendant then saw Dezmon run over to Lora and start pulling her hair and hitting her. Defendant ran over to protect Lora. Defendant saw Dezmon reach into his

4.

left pocket. As defendant was looking down, Dezmon punched him. Defendant then reached for his gun. Defendant explained he reached for his gun because he was in fear for his life based on the threat Danetta had made to him the previous night. Defendant reiterated that 'every time she would make a threat, she would follow through with it.'

"According to defendant, before he reached for his gun, all three family members—Danetta, Dazhane, and Dezmon—were hitting and kicking him. Defendant estimated he was hit five to six times and kicked three or four times. When defendant pulled out his gun, Danetta and Dazhane were standing facing him and Dezmon was behind him. Defendant fired his gun because he was in fear for his life and was trying to escape to his apartment." (*Dalton*, *supra*, F063443, fn. omitted.)

On August 29, 2011, a jury found defendant guilty of second degree murder (§ 187, subd. (a); count 1) and two counts of unpremeditated attempted murder (§§ 664, 187, subd. (a); count 2 (Dazhane) & count 3 (Dezmon)). The jury also found true various firearm use allegations (§§ 12022.5, subd. (a), 12022.7, subd. (a), 12022.53, subd. (c), 12022.53, subd. (d)).

On September 27, 2011, the trial court sentenced defendant to 83 years to life, as follows: on count 1, 15 years to life, plus 25 years to life for the section 12022.53, subdivision (d) enhancement; on count 2, a consecutive term of nine years, plus 25 years to life for the section 12022.53, subdivision (d) enhancement; on count 3, a consecutive term of two years four months, plus six years eight months for the section 12022.53, subdivision (c) enhancement. The remaining enhancements were stayed.

Over 10 years later, on March 21, 2022, defendant filed a petition for resentencing under section 1172.6 in the superior court. On the standardized petition form, defendant checked all the listed claims and requested the appointment of counsel.

On April 5, 2022, apparently without appointing counsel, the superior court summarily denied the petition in a written order, as follows:

"The Court is in receipt of a Petition for Resentencing filed pursuant to … section [1172.6] on March 21, 2022. The petition is summarily denied.

"[Defendant] … was convicted of murder and two counts of attempted murder. The appellate opinion affirming [defendant's] conviction and sentence, as well as the Court's records, reflect that [defendant] was the actual killer and was convicted of murder and attempted murder on a theory of being the direct perpetrator and not on a theory of felony murder of any degree, or a theory of natural and probable consequences."

On May 4, 2022, defendant filed a notice of appeal.

## DISCUSSION

In his supplemental brief, filed in propria persona, defendant raises a multitude of issues that go to the propriety of his trial and convictions. The time for raising trial issues was in his first appeal and has now passed. Those issues are not cognizable on this appeal.[4] The only issue properly before us is the denial of defendant's 2022 resentencing petition.

## I.     Law

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, substantially modified the law governing accomplice liability for murder, significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)), and eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*)). Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and

---

**4**     We also note that defendant claims the record on appeal has been tampered with and is inaccurate because material is missing and has been replaced. He states he did not realize this until after his direct appeal. Presumably, defendant's support for this claim falls outside the record on appeal and would need to be presented by way of a petition for writ of habeas corpus.

probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

As amended by Senate Bill 1437, section 188, subdivision (a)(3), prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). The latter provision requires the prosecution to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, " 'as described in subdivision (d) of … Section 190.2,' " the felony-murder special-circumstance provision. (*Strong*, *supra*, 13 Cal.5th at p. 708; see *Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

Senate Bill 1437 also added section 1172.6, which authorized an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the changes Senate Bill 1437 made to the definitions of the crime. (See *Strong*, *supra*, 13 Cal.5th at p. 708; *Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, *supra*, 10 Cal.5th at p. 843.)

In 2021, Senate Bill No. 775 (2021–2022 Reg. Sess.), extended the provisions of section 1172.6 to include convictions for attempted murder and manslaughter by modifying the law to "expand the authorization to allow a person who was convicted of murder under any theory under which malice is imputed to a person based solely on that person's participation in a crime … to apply to have their sentence vacated and be resentenced," (Legis. Counsel's Dig., Sen. Bill No. 775 (2021–2022 Reg. Sess.)) and to

7.

clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

Now section 1172.6 allows "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Subdivision (b)(1) of section 1172.6 requires that the petition be filed with the court that sentenced the petitioner, and must include (a) a declaration by the petitioner that he or she is eligible for relief under the section; (b) the superior court case number and year of conviction; and (c) whether the petitioner requests appointment of counsel. Subdivision (b)(2) provides that the trial court may deny the petition without prejudice if any of the information required by subdivision (b)(1) is missing and cannot be readily

8.

ascertained by the court. And subdivision (b)(3) states: "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." Subdivision (c) provides that after allowing the prosecution and petitioner additional time to submit briefings, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

## II.    Analysis

In this case, it appears the superior court summarily denied defendant's petition without following the procedure required by law. Assuming this is the case, we nevertheless conclude any error was harmless. As *Lewis* provides, a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief is state law error only, reviewable for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 973–974.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id*. at p. 974.)

Here, defendant was charged as the sole perpetrator of the murder and the attempted murders. The jurors were instructed that murder required that defendant himself harbored malice, either express or implied; that first degree murder required that defendant acted willfully, deliberately, and with premeditation; and that provocation could reduce murder from first degree to second degree. The jurors were similarly instructed on attempted murder and asked to determine whether defendant acted willfully,

deliberately, and with premeditation. The jurors were not instructed on felony murder or any vicarious liability theories that would allow malice to be imputed to defendant based on his participation in the crimes. Under the instructions given, the jurors found that defendant himself shot both Danetta and her children; he committed murder and attempted murder, but he did not act willfully, deliberately, and with premeditation. These findings were further supported when the jurors expressly found that defendant personally used a firearm and personally and intentionally discharged a firearm causing great bodily injury or death to Danetta. As to Dazhane, the jurors expressly found that defendant personally used a firearm, personally inflicted great bodily injury upon her, and personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury. Finally, as to Dezmon, the jurors expressly found that defendant personally used a firearm, and personally and intentionally discharged a firearm.

In sum, the jurors found that defendant shot both Danetta and her children and was the actual killer and the actual attempted killer. Therefore, defendant is ineligible for resentencing under section 1172.6 as a matter of law. Accordingly, defendant's petition would have been denied even if counsel had been appointed. Defendant was not prejudiced by the superior court's summary denial of his petition. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974.)[5]

## DISPOSITION

The superior court's denial of defendant's section 1127.6 resentencing motion is affirmed.

---

[5] Defendant's motions for discovery and an evidentiary hearing are denied.

10.